*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

KEINO TIYWAN NABORS,

        Defendant-Appellant.

UNPUBLISHED
March 28, 2024

No. 354377
Kalamazoo Circuit Court
LC No. 2019-000136-FH

ON REMAND

Before: K. F. KELLY, P.J., and GADOLA and REDFORD, JJ.

PER CURIAM.

This case returns to us on remand from the Michigan Supreme Court for reconsideration of defendant's arguments concerning the reasonableness of his sentence in light of the Supreme Court's decision in *People v Posey*, 512 Mich 317; ___ NW3d ___ (2023) (*Posey II*). *People v Nabors*, ___ Mich ___; 997 NW2d 208 (2023). Finding no errors warranting reversal, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

Defendant was convicted of breaking and entering into a building with intent to commit a larceny, MCL 750.110, conspiracy to commit breaking and entering into a building with intent to commit a larceny, MCL 750.157a, larceny in a building, MCL 750.360, and conspiracy to commit larceny in a building, MCL 750.157a. He was sentenced as a fourth-offense habitual offender, MCL 769.12, to 42 months to 15 years' imprisonment for each conviction, to be served concurrently. This Court's unpublished opinion succinctly sets forth the facts of the case:

> Defendant's convictions arose from his involvement in the breaking and entering of a Checkers restaurant and the larceny of the contents of the restaurant's safe. Defendant's girlfriend, Keeana Fruge, worked as a shift manager at the restaurant. Fruge was one of a few employees that had access to a code for entry into the building, a code to disarm the alarm system, and a key to open the

-1-

restaurant's safe. Fruge was acquainted with Abraham Saffold, who testified at trial in exchange for dismissal of the charges related to the burglary of the Checkers. Saffold admitted that he entered the restaurant and he used the passcodes and safe key to take $2,800.00 in cash and store coupons. Saffold's actions were recorded on surveillance video. Although Saffold admitted that he obtained the idea to rob the restaurant from a man he knew as "KI" and Fruge, he declined to identify defendant as the accomplice known as KI at trial. Nonetheless, Saffold testified that: (1) Fruge dropped him and KI off near the restaurant; (2) KI acted as the lookout while Saffold committed the crimes; (3) KI handled the bag of money after the larceny was committed; (4) Fruge picked up Saffold and KI; and (5) after being picked up, the three split the money.

Fruge admitted to driving defendant, her boyfriend, and Saffold the night before the larceny from Kalamazoo to a Grand Rapids nightclub. She acknowledged having a conversation with Saffold and defendant about potentially burglarizing the Checkers which she claimed amounted to nothing more than a "joke." Fruge testified that she dropped Saffold and defendant off together near the restaurant the morning of the theft and she picked them up 30 to 45 minutes later. When she picked up the men, defendant had cash that she had not previously seen.

Investigating police detectives examined the phone logs between Saffold, Fruge, and defendant and found contact between Saffold's and defendant's phones on the evening before the incident and on the day of the incident. It was also determined that Saffold's, defendant's, and Fruge's phones were in Kalamazoo on the evening leading up to the incident. But later that night, all three of their phones were in Grand Rapids. Finally, the phones were traced back to Kalamazoo before 5:00 a.m. on the day of the incident. Additionally, Fruge's phone records revealed text messages from defendant at around 4:00 a.m. The first message said, "F**k him let me do it. We can keep it all," and the second message said, "It would be worth it FRFR for just us." Although Fruge initially denied that defendant played any role in the crimes, she changed her story when confronted with these text messages.

Defendant testified in his own defense and denied any participation in the crimes. Further, defendant explained that the text messages did not provide evidence of his intent to commit the crimes on his own without the aid of Saffold. Rather, he contended that another man was renting a hotel room for Fruge, and defendant offered to pay for the room. Despite this denial of culpability, the jury convicted defendant as charged. [*People v Nabors*, unpublished per curiam opinion of the Court of Appeals, issued August 12, 2021 (Docket No. 354377), p 1-2.]

During the sentencing proceedings, the trial court explained its rationale for its sentencing decision, stating:

Okay, when I sentence you, Mr. Nabors, I balance the principles of punishment, rehabilitation, protection of society, as well as deterrents. I've certainly considered the guideline range, which of course incorporates your

criminal history. And the Prosecutor is correct, it is an atrocious one. You have prior to this incident, five adult felony convictions that go along with 16 adult misdemeanors. Your juvenile history is atrocious as well, five . . . felony adjudications. I note that four of them arose out of the same, um, petition, one misdemeanor. When this incident occurred you were on parole. According to Ms. Carr, as far as parole is concerned, you've already been sanctioned as a result of your behavior here. I note that you're in generally good physical health, you have a number of mental health concerns, I take that into consideration as well. I note that Ms. Carr found you to be cooperative in the preparation of the presentence report.

There still appears to be, as far as the Court is concerned, no remorse on your part as a result of your involvement in this case. It is obvious that the Jury did not believe your version of events, and—and subsequently then found you guilty of not one, but four criminal charges that you're facing in this case.

I note that you're an SSD recipient; I'll take that in consideration regarding the, uh, imposition of costs. Your education; that is a GED. Um, you tell the Court that you're trying to stay out of trouble, Ms. Carr says that up until this incident you were doing okay on parole, and apparently since the incident you've been doing okay on parole. The problem is, this incident is completely unacceptable. And I agree with the government in this case, uh, you may not be 24/7 a menace to society, but you are enough such that you should find yourself behind bars for a considerable period of time.

After sentencing, defendant filed a motion to correct invalid sentence arguing, in part, that the trial court imposed a disproportionate sentence given defendant's mental health issues and the seriousness of the offense. The trial court denied defendant's motion, reasoning that the court was only permitted to correct defendant's sentence if it was made on the basis of a sentencing error. Defendant appealed, arguing in part that his sentence was disproportionate "when considering his circumstances, including his mental health issues, and the nature of the offenses, thereby entitling him to resentencing." *Nabors*, unpub op at 5. We rejected the argument, relying on MCL 769.34(10) that "when a trial court imposes a sentence within the minimum sentencing range, the only factors for determining whether resentencing is required due to a disproportionate sentence are inaccurate information relied upon in determining the sentence and error in scoring the sentencing guidelines." *Id*. Because defendant failed to identify any such inaccurate information or errors, we affirmed. *Id*. at 5-6.

Defendant sought leave with the Michigan Supreme Court, which held defendant's reasonableness argument in abeyance while it decided *Posey II*. Having now held that MCL 769.34(10) is unconstitutional, we consider on remand defendant's sentence in light of *Posey II*.

## II. STANDARDS OF REVIEW

"A criminal defendant need not take any special steps to preserve the question of the proportionality of [his or] her sentence." *People v Foster*, 319 Mich App 365, 375; 901 NW2d 127 (2017) (quotation marks and citation omitted). Rather, "a defendant properly presents the

issue for appeal by providing this Court a copy of the presentence investigation report." *People v Walden*, 319 Mich App 344, 350; 901 NW2d 142 (2017). When reviewing a sentence for reasonableness, this Court's role is to assess whether the trial court abused its discretion by violating the "principle of proportionality" in fashioning the sentence. *People v Steanhouse*, 500 Mich 453, 459-460; 902 NW2d 327 (2017).

## III. ANALYSIS

Before the Michigan Supreme Court decided *Posey II*, this Court had repeatedly held that under MCL 769.34(10), "[w]hen a trial court does not depart from the recommended minimum sentencing range, the minimum sentence must be affirmed unless there was an error in scoring or the trial court relied on inaccurate information." *People v Schrauben*, 314 Mich App 181, 196 & n 1; 886 NW2d 173 (2016). Thus, under MCL 769.34(10):

> If a minimum sentence is within the appropriate guidelines sentence range, the court of appeals *shall affirm that sentence* and shall not remand for resentencing absent an error in scoring the sentencing guidelines or inaccurate information relied upon in determining the defendant's sentence. A party shall not raise on appeal an issue challenging the scoring of the sentencing guidelines or challenging the accuracy of information relied upon in determining a sentence that is within the appropriate guidelines sentence range unless the party has raised the issue at sentencing, in a proper motion for resentencing, or in a proper motion to remand filed in the court of appeals. [Emphasis added.]

In *People v Posey*, ___ Mich ___; ___ NW3d ___ (2023) (Docket No. 345491), slip op at 2 (*Posey III*), issued after the Supreme Court remanded the case, the Court explained the Supreme Court's holding in *Posey II*:

> Supreme Court Justices BOLDEN, BERNSTEIN, CAVANAGH, and WELCH agreed that the opening sentence of MCL 769.34(10) is unconstitutional, although Justice WELCH offered a different constitutional analysis. Furthermore, the latter three Justices agreed with Justice BOLDEN's pronouncements in her lead opinion that "within-guidelines sentences are to be reviewed for reasonableness," that reasonableness review requires a determination whether a sentence was proportionate, that there is a nonbinding presumption of proportionality, meaning that a within-guidelines sentence is not binding on the Court of Appeals, that "the defendant bears the burden of demonstrating that their within-guidelines sentence is unreasonable or disproportionate," and that "a within-guidelines sentence may indeed be disproportionate or unreasonable." [Citations and footnote omitted.]

The Court also explained the standard for determining whether a particular sentence was reasonable, stating that the "proper inquiry when reviewing a sentence for reasonableness is whether the trial court abused its discretion by violating the principle of proportionality . . . ." *Posey III*, ___ Mich App at ___; slip op at 2 (quotation marks and citations omitted). The Court continued:

-4-

An appropriate sentence should give consideration to the reformation of the offender, the protection of society, the discipline of the offender, and the deterrence of others from committing the same offense. With respect to sentencing and the guidelines, the key test is not whether a sentence departs from or adheres to the guidelines range. The key test is whether the sentence is proportionate to the seriousness of the matter. [*Id.* at ___; slip at 2-3 (quotation marks and citations omitted).]

In this case, the trial court did not abuse its discretion when it sentenced defendant to 42 months to 15 years' imprisonment for each of his convictions. In the trial court's colloquy during sentencing, the court explained that its sentence was made on the basis of the factors this Court identified in *Posey III*. First, the court addressed defendant's lack of reformation. Defendant had, prior to the current convictions, five adult felony and 16 misdemeanor convictions, demonstrating that defendant had not meaningfully reformed his behavior by engaging in yet another felony crime. The court also addressed the sentence in the context of protecting society, noting that defendant was not the worst of offenders but that to protect the public, he would need to spend "a considerable amount of time behind bars." Contrary to defendant's argument in his previous appeal, the trial court did consider defendant's mental health issues, as well as defendant's ability to obtain an education and generally comport himself during parole.

In sum, the trial court did not abuse its discretion when it sentenced defendant to concurrent 42-month to 15-year sentences for each conviction.

Affirmed.

/s/ Kirsten Frank Kelly
/s/ Michael F. Gadola
/s/ James Robert Redford